**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA – WHEELING DIVISION**

| | |
|---|---|
| MOUNDSVILLE WATER BOARD, | C.A. No.: 5:09-CV-00113 |
| Plaintiff, | The Honorable Frederick P. Stamp, Jr. |
| v. | Electronic Filing |
| SHOOK, INC. HEAVY & ENVIRONMENTAL DIVISION, LIBERTY MUTUAL INSURANCE COMPANY and GLEN P. CROUSE, | |
| Defendants. | |

**DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S
MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND**

NOW COMES Defendant, Liberty Mutual Insurance Company ("Liberty Mutual"), by and through its undersigned counsel, Avrum Levicoff, Esquire and Levicoff, Silko & Deemer, P.C., and files the following Memorandum in Opposition to Plaintiff's Motion to Remand.

## I.  Background

Plaintiff Moundsville Water Board ("Moundsville"), a West Virginia municipal utility and West Virginia citizen, instituted this action by filing a Complaint on or about September 18, 2009 in the Circuit Court of Marshall County, West Virginia. The Complaint asserts various claims against Liberty Mutual, Shook, Inc. Heavy & Environmental Division ("Shook") and Glen P. Crouse ("Crouse") arising from the alleged defective work of Shook in the construction of a new water treatment facility for Moundsville. Liberty Mutual is alleged to have executed a performance bond concerning Shook's performance of such construction. Crouse is merely alleged to have countersigned the performance bond. See Complaint, ¶¶4, 52. The Complaint asserts causes of action for Breach of Contract (Count I), Breach of Duty of Good Faith and Fair Dealing (Count II) and Unjust Enrichment/Quantum Meruit (Count III) against Defendant Shook

{L0302983.1 }

in relation to the construction project. Id. at ¶¶54-72. The Complaint also asserts a cause of action for Breach of Performance Bond (Count IV) against both Liberty Mutual and Crouse. Id. at ¶¶73-83. Finally, the Complaint further asserts causes of action for Breach of the Duty of Good Faith and Fair Dealing (Count V) and Violation of the West Virginia Unfair Trade Practices Act (Count VI) against only Defendant Liberty Mutual. Id. at ¶¶84-89. Importantly, the Complaint alleges that Defendant Crouse is jointly liable with Liberty Mutual for compliance with the terms of the performance bond solely because he countersigned the performance bond. Id. at ¶¶52, 75, 80.

Defendant Shook is a citizen of Ohio in that Shook is incorporated in the State of Ohio and has its principal place of business in the State of Ohio. See Complaint, ¶2. Defendant Liberty Mutual is a citizen of Massachusetts as it is incorporated in the State of Massachusetts and has its principal place of business in the State of Massachusetts. Id. at ¶3. The Complaint alleges that Defendant Crouse is a citizen of the State of West Virginia. Id. at ¶4.

Liberty Mutual timely filed a Notice of Removal to this Court pursuant to 28 U.S.C. §1441 on October 9, 2009. Defendants Shook and Crouse concurred with the Notice of Removal. Removal was made in this instance because the Defendants believe that Moundsville improperly or fraudulently joined Defendant Crouse in this action solely for the purpose of attempting to destroy diversity of citizenship and prevent removal.[1] Consequently, it is appropriate for the Court to disregard Defendant Crouse's West Virginia citizenship. If done so, there is otherwise complete diversity of citizenship of the parties to this controversy. It is further undisputed that the amount in controversy exceeds $75,000 as the Complaint asserts that the

---

[1] Correspondingly, in the First Defense in the Answer of Glen P. Crouse, Defendant Crouse asserts that the claims against him should be dismissed pursuant to Rule 12(b)(6) of the West Virginia Rules of Civil Procedure because the Complaint fails to state a claim against Crouse upon which relief can be granted.

Plaintiff is entitled to an award of "actual, consequential and compensatory damages in excess of $225,000" and "liquidated damages in excess of $662,000." See Complaint, ¶¶59, 66, 72, 83. As a result, this Court has diversity jurisdiction and, thus, removal was appropriate.

Liberty Mutual submits that Defendant Crouse cannot be held personally liable to the Plaintiff for several reasons.  First, Crouse, as an alleged West Virginia resident agent who countersigned the performance bond issued by Liberty Mutual, is not a party to the performance bond and, therefore, has no personal obligation to Plaintiff thereunder.  Second, as a disclosed agent of Liberty Mutual that acted at all times alleged within the scope of his authority, Crouse cannot be held personally liable for a breach of the performance bond.  Accordingly, there is simply no possibility that Defendant Crouse could be held personally liable to the Plaintiff under the performance bond.

## II. Argument

### A.    Standard for Removal

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter.  28 U.S.C. §1441(a).  A federal district court has original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs.  28 U.S.C. §1332(a).

In this matter, disregarding Defendant Crouse's West Virginia citizenship, as the Court should, there is complete diversity of citizenship among the parties.  Defendant Liberty Mutual and Defendant Shook are citizens of Massachusetts and Ohio, respectively, and the Plaintiff is a citizen of West Virginia.  In addition, it is undisputed in this matter that the amount in

3

controversy exceeds $75,000.  Indeed, the Complaint asserts that the Plaintiff is entitled to an award of "actual, consequential and compensatory damages in excess of $225,000" and "liquidated damages in excess of $662,000." See Complaint, ¶¶59, 66, 72, 83.  As a result, this Court has original jurisdiction under 28 U.S.C. §1332(a) and removal is appropriate under 28 U.S.C. §1441(a).

> **B.  Removal is Appropriate Because Defendant Crouse Was Improperly or Fraudulently Joined in This Matter and There is Otherwise Complete Diversity of Citizenship Between the Parties to the Controversy.**

Although complete diversity of citizenship is lacking on the face of the Complaint due to the fact that the Plaintiff and Defendant Crouse are citizens of West Virginia, the Court should disregard Defendant Crouse's West Virginia citizenship because he was "fraudulently joined" in this matter.[2]  The "fraudulent joinder" doctrine permits removal even though a non-diverse party or resident defendant is named in a case.  Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). This doctrine allows the court to disregard, for jurisdictional purposes, the citizenship of certain non-diverse or resident defendants.  Id. (citing Cobb v. Delta Exports, Inc., 186 F.3d 675, 677-78 (5th Cir. 1999)); Hughes v. Sears, Roebuck & Co., No. 2:09-cv-93, 2009 WL 2877424, *3 (N.D.W.Va. Sept. 3, 2009) (Bailey, J.).

To show that a defendant has been "fraudulently joined," the removing party must show either "that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court; or that there has been outright fraud in the plaintiff's

---

[2] The term "fraudulent joinder" is misleading because the doctrine requires neither a showing of fraud nor joinder. See Mayes v. Rapoport, 198 F.3d 457, 461, n. 8 (4th Cir. 1999); Evans v. CDX Services, LLC, 528 F.Supp.2d 599, 602 (S.D.W.Va. 2007).  Rather, it is "a term of art which does not reflect on the integrity of plaintiff or counsel, but is merely the rubric applied when a court finds either that no cause of action is stated against non-diverse defendant, or in fact no cause of action exists." Evans, 528 F.Supp.2d at 602 (quoting AIDS Counsel and Testing Ctrs. v. Group W Television, Inc., 903 F.2d 1000, 1003 (4th Cir. 1990)).

pleading of jurisdictional facts." Grubbs v. Westfield Ins. Co., 430 F.Supp.2d 563, 566 (N.D.W.Va. 2006) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). "In determining whether joinder is fraudulent, a court is 'not bound by the allegations of the pleadings, but may instead consider the entire record, and determine the basis of joinder by any means available.'" Adkins v. Supervalu, Inc., No. 3:08-1448, 2009 WL 2029807, *2 (S.D.W.Va. July 9, 2009) (citing AIDS Counseling and Testing Ctrs., 903 F.2d at 1004).

In this matter, it is obvious that the Plaintiff joined Crouse as a defendant in this action solely for the purpose of attempting to destroy diversity of citizenship and prevent removal. There is literally no basis upon which Crouse may be held liable. The cause of action asserted against Defendant Crouse is for breach of the performance bond issued by Liberty Mutual. See Complaint, ¶¶73-83. However, Crouse is plainly not the surety, nor is he otherwise a party on the bond. The Plaintiff's sole basis for liability is grounded upon the allegation that Defendant Crouse was the West Virginia resident agent of Liberty Mutual that countersigned the performance bond. Id. at ¶¶75, 80. The Court must, of course, apply West Virginia substantive law, and there is no West Virginia case that holds an agent liable solely on the ground that such agent was the resident countersigning agent on a surety bond. Nor would such a cause of action be supportable based on generally applicable principles void of West Virginia law. As a mere counter-signatory agent, Crouse is not a party to the performance bond and, as an agent for a disclosed principal, has no personal liability exposure on the performance bond.

At the outset, West Virginia Code §33-12-22 provides that: "[a]ny person who shall solicit within this state an application for insurance shall, in any controversy between the insured or his or her beneficiary and the insurer issuing any policy upon such application, be regarded as

the agent of the insurer and not the agent of the insured." Thus, under West Virginia law, it is well established that an agent is not a party to an insurance contract. See Fleming v. United Teacher Associates Ins. Co., 250 F.Supp.2d 658, 662 (S.D.W.Va. 2003); Shrewsbery v. National Grange Mutual Ins. Co., 395 S.E.2d 745, 748 (W.Va. 1990). Accordingly, it is clear that licensed insurance agents acting within the scope of their authority for an insurer cannot be held personally liable to the insured in either tort or contract. See Fleming, 250 F.Supp.2d at 662; Benson v. Continental Ins. Co., 120 F.Supp.2d 593, 595 (S.D.W.Va. 2000). In fact, under West Virginia law, there is only one circumstance in which a resident agent can be held personally liable on an insurance contract – where the insurer is not licensed to transact insurance in West Virginia. W.Va. Code §33-12-20; Benson, 120 F.Supp.2d at 595 (holding that "an agent or broker has personal liability exposure on an insurance contract only where the insurer is not licensed to transact insurance in this state").[3]

The United States District Court for the Southern District of West Virginia has specifically addressed the issue of the personal liability of an insurance agent in the context of fraudulent joinder. In Fleming v. United Teacher Associates Ins. Co., a citizen of West Virginia instituted an action in West Virginia state court against a Texas insurance company and its insurance agent, who was a citizen of West Virginia. Fleming, 250 F.Supp.2d at 659-60. The Plaintiff asserted a claim for, inter alia, breach of an insurance contract against the insurance

---

[3] W.Va. Code 33-12-20 provides:

> Any agent who participates directly or indirectly in effecting any insurance contract, except authorized reinsurance, upon any subject of insurance resident, located or to be performed in this state, where the insurer is not licensed to transact insurance in this state, shall be personally liable upon the contract as though such agent were the insurer thereof.

In this instance, there is no allegation that Liberty Mutual is not licensed to transact insurance in West Virginia. This is likely because it is undisputed that Liberty Mutual is licensed to transact insurance in West Virginia.

company and its agent. Id. at 660. The insurer removed the action to the Southern District of

West Virginia and the Plaintiff, thereafter, filed a Motion to Remand. Id. The insurer contended

that its agent was fraudulently joined in the action solely for the purpose of defeating the

diversity jurisdiction of the court. Id. In its analysis, the Court specifically held that:

> In West Virginia, duly licensed insurance agents acting within the scope of their employment may not be sued in their individual capacity in tort or in contract. Under West Virginia law, which the Court must apply in this diversity case, the agent is not a party to the insurance contract. As the Supreme Court of Appeals of West Virginia stated in *Shrewsbery v. National Grange Mutual Ins. Co.*, 183 W.Va. 322, 395 S.E.2d 745, 748 (1990), "[An insurance agent] is not party to a contract with the insured; rather, he helps the company procure and service the company's contract with the insured." *Shrewsbery* is consistent with the longstanding rule in West Virginia that the agent of a disclosed principal who acts within the scope of his authority may not be held personally liable on a contract he obtains for his principal. *See Hoon v. Hyman*, 87 W.Va. 659, 105 S.E. 925 (1921); *Hurricane Milling Co. v. Steel & Payne Co.*, 84 W.Va. 376, 99 S.E. 490 (1919).

Id. at 662. The Court held that the agent was fraudulently joined and, thus, it disregarded her

West Virginia citizenship for jurisdictional purposes. Id. at 662-63.

Similarly, in Benson v. Continental Ins. Co., the Court held that an insurer's agent was

fraudulently joined. Benson, 120 F.Supp.2d at 595. In Benson, insureds instituted an action

against their homeowner's insurer and its agent in West Virginia State Court for refusal to pay

their claims for fire loss and fraudulent misrepresentations. Id. at 594. The defendants removed

the action to the Southern District of West Virginia alleging that the agent was fraudulently

joined. Id. The insureds then moved to remand. Id. The Court denied the insured's Motion to

Remand reasoning that:

> As a general rule, "[w]here the agent is the agent of the insurer, acts within the scope of his authority, and his principal is

7

disclosed, he is not liable to the insured either in contract or in tort." 43 Am.Jur.2d, *Insurance* §138. West Virginia law specifically establishes a person who solicits an application for insurance is the agent of the insurer, not the insured. *See* W.Va. Code §33-12-23. Additionally, an agent or broker has personal liability exposure on an insurance contract only where the insurer is not licensed to transact insurance in this state. *See id.* §33-12-21 [now appearing at §33-12-20]. Plaintiffs do not allege [the insurer] is not licensed to do business in West Virginia.

In this action, [the agent] is named explicitly as the agent of [the insurer]. There is no allegation [the insurer] was an undisclosed principal in the Plaintiffs' insurance purchase, but rather the Complaint clearly states [that the agent] acted as [the insurer's] agent. Nor is there an allegation that, in making representations or misrepresentations about policy renewal and its relation to collecting claimed insurance proceeds, [the agent] was acting outside the scope of its authority as [the insurer's] agent. Consequently, [the agent] would not be liable in contract or tort to the insured Plaintiffs under West Virginia law.

<u>Id.</u> at 595.

Courts have been particularly willing to find fraudulent joinder and disregard the citizenship of a non-diverse party in instances such as this, where a plaintiff asserts a claim against an insurance company and improperly joins a local or resident agent of the insurer. <u>Fleming, supra</u>; <u>Benson, supra</u>; <u>see also</u> <u>Grubbs v. Westfield Ins. Co.</u>, 430 F.Supp.2d 563 (N.D.W.Va. 2006) (holding that an insurer's agent was fraudulently joined because the agent was not a party to the insurance contract and, thus, could not be held liable to the insureds for common law bad faith); <u>Grennell v. Western Southern Life Ins. Co.</u>, 298 F.Supp.2d 390, (S.D.W.Va. 2004) (holding that life insurer's agents were fraudulently joined in fraud claim where the agents did not sell the policies to the plaintiffs); <u>Evans v. CDX Services, LLC</u>, 528 F.Supp.2d 599 (S.D.W.Va. 2007) (holding that a non-diverse co-employee was fraudulently joined where an injured plaintiff sued his employer and the co-employee as a result of a work

related incident); <u>Wygal v. Litton Loan Servicing, LP</u>, No. 5:09-cv-00322, 2009 W.L. 2524701 (S.D.W.Va. Aug. 18, 2009) (holding that an individual defendant was fraudulently joined in an action asserted against a debt collection company and the individual defendant who is alleged to be the substitute trustee of property that was security for the debt at issue).[4]

In this matter, the Plaintiff has no possibility of a right to relief against Defendant Crouse for breach of the performance bond. It is undisputed that Defendant Crouse was a resident West Virginia agent who affixed the countersignature to the Liberty Mutual bond. <u>See</u> Complaint, ¶¶4, 75, 80, Exhibit B; Plaintiff's Brief, p. 2. Crouse is a disclosed agent of Liberty Mutual, and not subject to personal liability.

Moundsville contends that because the contract documents require that the performance bond be signed by a West Virginia agent and Defendant Crouse countersigned the performance bond on behalf of Liberty Mutual, this somehow allows for an imposition of liability upon Crouse in the event of a breach of the performance bond. <u>See</u> Plaintiff's Brief, p. 6. There is, however, no basis for that contention. Nothing in the express provisions of the bond, or the construction contract makes the countersigning agent personally liable for a breach of the performance bond.[5] Rather, the contract documents merely allegedly require a West Virginia resident agent to countersign the performance bond. Nor is there any case authority for that ambitious proposition.

---

[4] These decisions are probably also informed by the well known pragmatic effort of plaintiffs in acting against insurers attempting to avoid federal removal, and take advantage of the perceived greater comfort of a state court forum by naming a local agent as a defendant.

[5] Moundsville mistakenly presumes that the requirement that the performance bond be signed by a West Virginia resident agent allows for a cause of action against the agent for breach of the performance bond. <u>See</u> Plaintiff's Brief, p. 6. However, Moundsville cites no basis for that contention.

Moundsville contends that W.Va. Code §55-8-7 somehow makes Defendant Crouse "a party to the contract" and "expressly allows for suit to be brought against some or all signatories" to the performance bond. See Plaintiff's Brief, pp. 6-7. This procedural statute, however, merely creates joint and/or several liability as between parties to contractual agreements. The statute creates no liability upon non-parties to a contract. The statute certainly creates no liability upon an agent of a disclosed principal who merely countersigns a performance bond. W.Va. Code §55-8-7 provides, in relevant part, as follows:

> (a) The holder of any note, check, draft, bill of exchange or other instrument of any character, whether negotiable or not or any person entitled to judgments for money on contract, in any action at law or proceeding by notice for judgment on motion thereon, may join all or any intermediate number of the persons liable by virtue thereof, whether makers, drawers, endorsers, acceptors, assignors, or absolute guarantors, or may proceed against each separately, although the promise of the makers, or the obligations of the persons otherwise liable, may be joint or several, or joint and several....[6]

This statute "was intended to destroy the distinction between joint, joint and several, and several liabilities" and is intended to be confined to the parties liable on a particular instrument. State ex rel. Shenandoah Valley National Bank v. Hiett, 17 S.E.2d 878 (W.Va. 1941). Here, Defendant Crouse is simply not a party or subject to any liability on the bond. Thus, W.Va. Code 55-8-7

---

[6] Parenthetically, there is no indication or authority that supports the application of this statute to a performance bond. The terms set forth in the statute are not specifically defined in the statute but are defined in the Uniform Commercial Code, which has been adopted in West Virginia. "Maker" means a person who signs or is identified in a note as a person undertaking to pay. W.Va. Code §46-3-103(a)(5). "Drawer" means a person who signs or is identified in a draft as a person ordering payment. W.Va. Code §46-3-103(a)(3). "Acceptor" means a drawee who has accepted a draft. W.Va. Code §46-3-103(a)(1). "Indorser" means a person who makes an indorsement. W.Va. Code §46-3-204(b). "Indorsement" means a signature, other than that of a signer as maker, drawer, or acceptor, that alone or accompanied by other words is made on an instrument for the purpose of (1) negotiating the instrument, (2) restricting payment of the instrument or (3) incurring indorser's liability on the instrument, but regardless of the intent of the signer, a signature and its accompanying words is an endorsement unless the accompanying words, terms of the instrument, place of the signature, or other circumstances unambiguously indicate that the signature was made for a purpose other than indorsement. W.Va. Code §46-3-204(a).

has no bearing on whether he may be held liable on the performance bond.[7]  Moundsville has

offered no authority to support the proposition that this statute somehow creates an exception to

the general rule that an agent of an insurer acting within the scope of their authority for the

insurer is not a party to an insurance contract, such as the performance bond, and may not be

sued in their individual capacity by the insured in either tort or contract.  See Fleming, supra;

Benson, supra; Shrewsbery, supra.[8]  As a result, this statute certainly does not provide the

possibility of a cause of action against Defendant Crouse for breach of the performance bond as

Moundsville mistakenly contends.[9]

In sum, there is no basis for Moundsville's claims against Defendant Crouse.  For these

reasons, the Court must disregard Defendant Crouse's West Virginia citizenship for removal

jurisdiction purposes.  If the Court does so, as the Defendants respectfully submit that it should,

---

[7] Importantly, Moundsville concedes that "insurance agent acting within the scope of his employment usually may not be sued in contract or tort" and that an insurance agent "is not a party to a contract with the insured."  See Plaintiff's Brief, pp. 6-7.  Moundsville, however, contends that W.Va. Code §55-8-7 makes an agent that countersigned the performance bond a party to the contract and, thus, jointly liable for a breach of the performance bond.  Id.  Moundsville offers no cases or authority to support this nonsensical interpretation of the statute.  Rather, even a cursory review of W.Va. Code §55-8-7 reveals that it simply does not create an exception to the general rule that an insurance agent is not a party to a contract with the insured and, thus, may not be sued by the insured for breach of such contract.

[8] Moundsville cites the case of Warden v. Bank of Mingo, 341 S.E.2d 679 (W.Va. 1986) to support the proposition that Defendant Crouse is somehow a party to the performance bond.  In Warden, however, the Court did not find that an insurer's agent was a party to an insurance contract.  Instead, the Court found that because the bank that had authority to issue a Certificate of Insurance under the insurer's policy acted beyond the scope of its authority in preparing a Certificate of Insurance, it became bound by the contract.  In this case, there is no allegation that Defendant Crouse acted beyond the scope of his authority.  Rather, it is undisputed that Defendant Crouse was acting within the scope of his authority for Liberty Mutual when he countersigned the performance bond.

[9] Moundsville contends that the instant situation is analogous to recognized exceptions to the general rule that an agent may not be sued in contract or tort by an insured such as under (i) the doctrine of "reasonable expectation of insurance," (ii) the existence of a special relationship, or (iii) a violation of the West Virginia Unfair Trade Practices Act.  See Plaintiff's Brief, p. 7.  Clearly, however, none of these instances are present in this matter.  In this case, there is clearly no possibility that Moundsville could assert a claim against Defendant Crouse under the doctrine of reasonable expectation of insurance or under the West Virginia Unfair Trade Practices Act.  Further, there is no existence of a special relationship in this matter that could possibly give rise to personal liability on the part of Defendant Crouse to Moundsville.  Moundsville cannot maintain claims against Crouse based upon allegedly improper claims handling because it is not alleged in the Complaint that Crouse participated to any extent in the claims handling in relation to the performance bond.  Moundsville has cited absolutely no cases to support the proposition that an insured can maintain a cause of action against an agent of an insurer solely on the basis that the agent countersigned an insurance contract.

there is complete diversity of citizenship of the parties to the controversy and, thus, the Court has original jurisdiction under 28 U.S.C. §1332 and no defendant is a resident of West Virginia. Thus, the case is removable to this Court.

### III.   <u>Conclusion</u>

For the above-stated reasons, Defendant Liberty Mutual Insurance Company respectfully submits that this Court has subject-matter jurisdiction over this matter.  Therefore, Moundsville Water Board's Motion to Remand this matter to the Circuit Court of Marshall County, West Virginia must be denied.

Respectfully submitted:

By: _____

Avrum Levicoff, Esquire
W.Va. I.D. #4549
Levicoff, Silko & Deemer, P.C.
Centre City Tower, Suite 1900
650 Smithfield Street
Pittsburgh, PA  15222
*Counsel for Defendant Liberty Mutual*
*Insurance Company*

12

026IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA – WHEELING DIVISION

MOUNDSVILLE WATER BOARD,

       Plaintiff,

       v.

SHOOK, INC. HEAVY &
ENVIRONMENTAL DIVISION, LIBERTY
MUTUAL INSURANCE COMPANY and
GLEN P. CROUSE,

       Defendants.

C.A. No.:  5:09-CV-00113

The Honorable Frederick P. Stamp, Jr.

Electronic Filing

## CERTIFICATE OF SERVICE

I hereby certify that on November 5, 2009, I electronically filed the foregoing DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants:

Louis H. Khourey, Esquire
Gold, Khourey & Turak, L.C.
510 Tomlinson Avenue
Moundsville, WV  26041
*Counsel for Plaintiff – Moundsville Water Board*

Gerard Stowers, Esquire
Bowles Rice McDavid Graff & Love
P.O. Box 1386
Charleston, WV  25325
*Counsel for Defendant Glen P. Crouse*

Christopher T. O'Shaughnessy, Esquire
Thompson Hine, LLP
41 S. High Street – Suite 1700
Columbus, OH  43215
*Counsel for Defendant Shook, Inc. Heavy & Environmental Division*

By: _____
       Avrum Levicoff, Esquire
       W.Va. I.D. #4549
       Levicoff, Silko & Deemer, P.C.
       Centre City Tower, Suite 1900
       650 Smithfield Street
       Pittsburgh, PA  15222

       *Counsel for Defendant Liberty Mutual Insurance Company*

{L0297590.1 }