**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**WHEELING DIVISION**

MOUNDSVILLE WATER BOARD,      :
      :
      Plaintiff,      :      Civil Action No. 5:09-cv-00113-FPS
      :
      vs.      :      District Judge Stamp
      :
SHOOK, INC. HEAVY &      :
ENVIRONMENTAL DIVISION, et al.,      :
      :
      Defendants.      :

**DEFENDANT SHOOK, INC. HEAVY & ENVIRONMENTAL**
**DIVISION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S**
**MOTION TO REMAND FILED OCTOBER 23, 2009**

Where a plaintiff has no possibility of success on a cause of action against a resident

defendant but named the resident as a defendant, the legal doctrine of fraudulent joinder permits

courts to remove the case to federal court even though the resident defendant is named in the

case. *Grubbs v. Westfield Ins. Co.* 430 F.Supp.2d 563, 566 (N.D.W.Va. 2006).

> Although the rigor of the fraudulent joinder standard is draconian,
> **there are a few cases where this standard is regularly met**; the
> **present case falls squarely within one of those categories**. In
> West Virginia, duly licensed insurance agents acting within the
> scope of their employment may not be sued in their individual
> capacity in tort or in contract. Under West Virginia law…the
> agent is not a party to the insurance contract. *Fleming v. United
> Teacher Associates Ins. Co.*, 250 F.Supp.2d 658, 662 (S.D.W.Va.
> 2003). (emphasis added).

In the present case, defendant Glen Crouse is a West Virginia resident and an insurance

agent who countersigned the performance bond. As an insurance agent acting within the scope

of his employment, Mr. Crouse may not be sued personally in contract or tort by Moundsville.

Without a possibility of success on its cause of action against Mr. Crouse, Moundsville's civil

action was properly removed to federal court pursuant to the fraudulent joinder doctrine.

## I.    STATEMENT OF FACTS

In 2005, Shook entered into a contract with Moundsville (the "Contract") to construct a new water treatment facility in Moundsville (the "Project") and Moundsville agreed to compensate Shook $15,788,000 for completion of the work. Complaint ¶¶ 7-10. The Contract required Shook to provide a performance bond concerning Shook's performance. *Id.* The Contract further provided that the performance bond must be obtained from a surety or insurance company that is duly licensed or authorized to do business in West Virginia and that a West Virginia agent of that company must countersign the performance bond. *See,* Complaint Exhibit C § SC-5.02. Liberty Mutual provided a performance bond to the Project. *See,* Complaint Exhibit B. Mr. Crouse was the West Virginia insurance agent that countersigned the performance bond, but had no other obligations under the terms of the performance bond. *Id.*

On May 29, 2009, Shook filed the Ohio Action, alleging that Shook fully performed the work required under the Contract and that Moundsville breached the Contract by failing to pay Shook the full Contract amount. *See,* Shook Motion to Dismiss or Transfer, Exhibit A. Four months after Shook filed the Ohio Action, on September 18, 2009—and rather than file compulsory counterclaims in the Ohio Action—Moundsville filed a separate complaint in West Virginia state court. In that Complaint, Moundsville alleges that it withheld $200,000 from payments to Shook because Shook failed to fully perform.[1]  *Id.* The allegations in the two cases involve the same parties, the same construction project, and the same contract.

---

[1]    Shook denies the allegation that it did not fully perform under the Contract as was set forth in the Ohio Action.

Without a sustainable cause of action to do so, Moundsville joined Mr. Crouse and based its selection of venue on the fact that Mr. Crouse is a West Virginia resident.[2]   The Defendants in the case—Shook, Liberty and Mr. Crouse—joined in a Notice of Removal, pursuant to 28 U.S.C. § 1441, in order to invoke this Court's jurisdiction over this case.

## II.    LAW AND ARGUMENT

### A.    This Case is Subject to this Court's Diversity Jurisdiction.

Under 28 U.S.C. § 1332(a), this Court has jurisdiction to entertain cases where complete diversity exists between the plaintiff and the defendants and the amount in controversy exceeds $75,000.  A federal court has original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.  *Id.*  In its Complaint, Moundsville alleged that Shook is liable for, *inter alia*, in excess of $225,000 in compensatory damages.  Complaint ¶ 82.  Thus, the amount in controversy requirement is met.

Plaintiff Moundsville is a citizen of West Virginia.  Defendant Shook is a citizen of Ohio.  Defendant Liberty Mutual is a citizen of Massachusetts.  Mr. Crouse is a citizen and resident of West Virginia.  However, Mr. Crouse's citizenship should be disregarded as Moundsville's cause of action against Mr. Crouse has no possibility of success.

Under 28 U.S.C. § 1441(a), defendants may remove a case from state court to the appropriate District Court if jurisdiction in the District Court exists such that the plaintiff could have originally filed the case in the District Court.  Had Moundsville only named defendants where a viable cause of action was alleged (thereby omitting Mr. Crouse from the suit), this Court would have jurisdiction.  Applying the doctrine of fraudulent joinder discussed below, this civil action was properly removed.

---

[2]      Moundsville is a West Virginia citizen.  While Shook is an Ohio citizen and Liberty Mutual is a Massachusetts citizen, Mr. Crouse is also a West Virginia citizen.  If Mr. Crouse is dismissed as a defendant, complete diversity and therefore diversity jurisdiction under 28 U.S.C. § 1332(a) would exist.

**B.**     **Moundsville Fraudulently Joined Mr. Crouse to Prevent Removal.**

Fraudulent joinder exists where a plaintiff has no possibility of success against the in-state defendant, even when all factual allegations are resolved in favor of the plaintiff. *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999).[3]   Shook acknowledges that this is a high standard, but Moundsville cannot succeed on the claims it alleged against Mr. Crouse.

In considering the viability of Moundsville's allegations against Mr. Crouse, this Court must apply the Supreme Court's decision in *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (explaining that the legal conclusions in a complaint "must be supported by factual allegations" that "plausibly give rise to an entitlement to relief" for the complaint to survive a motion to dismiss). *See, Crawford v. Charles Schwab & Co.*, 2009 U.S. Dist. LEXIS 101598 (N.D. Tex. Oct. 30, 2009) (applying *Iqbal* to fraudulent joinder analysis and denying remand where plaintiff failed to plead claims against non-diverse defendants). Under *Iqbal*, a claim is facially plausible when plaintiff pleads facts sufficient to allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949. While the court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff, the court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S.Ct. at 1949-50. With these standards in mind, it is apparent Moundsville has not established a claim against Mr. Crouse.

Moundsville itself acknowledges that West Virginia courts have addressed this exact scenario and stated that the general rule is that an insurance agent acting in the scope of his

---

[3]     In this and other filings, Moundsville repeatedly urges the Court to ignore the substantive claims of the case until the jurisdictional issue is resolved. This is a misleading proposition by Moundsville. Moundsville's Motion to Remand asks the Court to apply the doctrine of fraudulent joinder. That doctrine requires the Court to consider the potential for success of the substantive claims. Moundsville does not want the Court to consider its substantive claims against Mr. Crouse because after considering those claims, the Court can only conclude that Moundsville fraudulently joined Mr. Crouse. As stated above, *Iqbal* compels consideration of the plausibility of Moundsville's claims against Mr. Crouse.

employment may not be sued personally in contract or tort. *Lawson v. American Gn. Ass. Co.*, 455 F.Supp.2d 526, 530 (S.D.W.Va. 2006); *see* Brief in Support of Motion to Remand, p. 6-7. In its Brief, like its Complaint, Moundsville does not dispute that Mr. Crouse is an insurance agent or that he was acting in the scope of his employment. Therefore, this general rule regarding an insurance agent's liability applies to bar Moundsville's claims against Mr. Crouse.

Further, West Virginia district courts have addressed these exact facts in this exact procedural context and routinely find that this situation is perfectly suited to find fraudulent joinder and to deny a motion to remand. *See, e.g., Fleming v. United Teacher Associates Ins. Co.*, 250 F.Supp.2d 658 (S.D.W.Va. 2003); *Hill v. John Alden Life Ins. Co.*, 556 F.Supp.2d 571 (S.D.W.Va. 2008); *Benson v. Continental Ins. Co.*, 120 F.Supp.2d 593 (S.D.W.Va. 2000); *Halkias v. The AXA Equitable Life Ins. Co.*, 2006 WL 890620 (S.D.W.Va. 2006). In *Fleming*, an insured individual filed breach of contract and other claims against the insurance company that denied her coverage under the insurance policy. *Fleming, supra* at 660. In order to destroy diversity and prevent removal, the insured party also named as a defendant the individual agent who sold her the policy—who was a resident of the same state as the insured party. *Id.* The defendants filed a notice of removal and in that case, as here, the insured party sought to remand by alleging that the doctrine of fraudulent joinder carried a heavy burden. *Id.*

The court denied the motion to remand based upon the general rule that an insurance agent acting within the scope of his employment cannot be sued in contract or tort. *Id.* Specifically, the court held that:

> Although the rigor of the fraudulent joinder standard is draconian, **there are a few cases where this standard is regularly met**; the **present case falls squarely within one of those categories**. In West Virginia, duly licensed insurance agents acting within the scope of their employment may not be sued in their individual capacity in tort or in contract. Under West Virginia law...the agent is not a party to the insurance contract. *Id.* at 662 (emphasis added).

Under the standard set forth in *Fleming*, Moundsville may not sue Mr. Crouse personally because he is an insurance agent who was acting within the scope of his employment. Moundsville has no possibility to succeed on its claims against Mr. Crouse, the only West Virginia resident defendant.   Therefore, Moundsville fraudulently joined Mr. Crouse and defendants' removal was proper.

      C.      **The Very Narrow Exceptions Cited by Moundsville Do Not Apply.**

Moundsville attempts to identify an exception to the general rule regarding claims against insurance agents  However, there are very few such exceptions to the general rule and they are very narrow with no application to this case.  Those limited exceptions are (i) the doctrine of "reasonable expectation of insurance," (ii) the existence of a special relationship, or (iii) a violation of the West Virginia Unfair Trade Practices Act.  *See,* Brief in Support of Motion to Remand, p. 7.  Moundsville does not even attempt to explain how any of these exceptions might apply in this case because these exceptions have no application here.

The doctrine of reasonable expectation stands for the proposition that an insurance agent may be liable to an insured party but only where (1) there is some ambiguity regarding the terms of the insurance contract *and* (2) the insurance agent took affirmative action or made specific statements to the insured which created a misconception regarding the coverage of the insurance policy. *See, e.g., Lawson v. Am. General Assurance Co.*, 455 F.Supp.2d 526, 531 (S.D.W.Va. 2006); *Casto v. Northwestern Mutual Life Ins. Co.*, 2009 WL 2915132, *2 (S.D.W.Va. 2009); *Robertson v. Fowler*, 475 S.E.2d 116, 120 (W.Va. 1996); *Hill, supra* at 574-75.  Moundsville did not plead and has never alleged that there is any ambiguity in the insurance contract (the performance bond).  Moundsville did not plead that Mr. Crouse took any affirmative action or made any specific statements to Moundsville regarding the insurance coverage.  As Moundsville

admits, Mr. Crouse's only involvement was to countersign the performance bond as a West

Virginia resident agent of Liberty Mutual.  Even if Moundsville had pled the doctrine of

reasonable expectations, that exception does not apply in this situation.

The "special relationship" exception to the general rule states that in very limited

circumstances, the insurance agent and the insured party may have such a special relationship

that the insurance agent is under a separate duty to advise an insured party on its coverage needs.

*Hill, Peterson, Carper, Bee & Deitzler, P.L.L.C. v. XL Specialty Ins. Co.*, 261 F.Supp.2d 546,

548 (S.D.W.Va. 2003).  West Virginia courts have identified the following limited situations in

which an insurance agent may have such a duty:

> express agreement, long established relationships of entrustment in which the
> agent clearly appreciates the duty of giving advice, additional compensation apart
> from premium payments, ... the agent holding out as a highly-skilled expert
> coupled with reliance by the insured, ... or where there is a course of dealing over
> time putting the agent on notice that his advice is being sought and relied upon.
> *Hill, Peterson, supra* at 548-549 quoting *Sintros v. Hamon*, 148 N.H. 478, 810
> A.2d 553, 556 (2002).

Again, Moundsville has not pled that any of these circumstances exist between itself and Mr.

Crouse.  Moundsville acknowledges that the only contact Mr. Crouse had with Moundsville, the

performance bond or this Project was to countersign the performance bond as a West Virginia

resident agent of Liberty Mutual.  Even if Moundsville had pled the "special relationship"

exception, a countersignature[4] is not sufficient to raise that exception.

---

[4]     Moundsville attempts to argue that the general rule should not apply because Mr. Crouse
"countersigned" the performance bond.  The Court can promptly dispose of this argument with just a simple review
of the dictionary definition of countersigned.  "'Countersign' means to write one's own name next to someone else's
*to verify the other signer's identity*."  Black's Law Dictionary 2d ed. (2001) (emphasis added).  Therefore, Mr.
Crouse "countersigned" the performance bond simply to verify that the signature on the performance bond
purporting to be that of Kimberly D. Richards, Liberty Mutual's attorney-in-fact, is in fact the signature of Kimberly
D. Richards.  *See,* Complaint Exhibit B, p. 00600-13.  Moundsville has not alleged any fraud related to Ms.
Richards' signature or Mr. Crouse's verification of that signature.  Therefore, Mr. Crouse's countersignature on the
performance bond does not require the Court to ignore the general rule.

Under the West Virginia Unfair Trade Practices Act, an insurance agent may be liable to an insured party if the agent engages in unfair methods of competition or an unfair and deceptive act or practice in the business of insurance. *See,* W.Va. Code § 33-11-2(a); *cf., Taylor v. Nationwide Mutual Ins. Co.*, 214 W.Va. 324, 589 S.E.2d 55 (2003) (holding only that a claims adjuster directly employed by an insurer could be liable for violations of the Unfair Trade Practices Act) . West Virginia courts have held that this statute will only serve as an exception to the general rule regarding the liability of an insurance agent where the plaintiff asserts a cause of action under the statute directly against the agent and alleges that the agent *individually* engaged in unfair and deceptive acts or practices because liability under the statute is created by the agent's own conduct. *Halkias, supra* at *3 (emphasis added). Moundsville did not plead that Mr. Crouse is liable to Moundsville under the West Virginia Unfair Trade Practices Act. In fact, Moundsville has not alleged a single action on the part of Mr. Crouse that could constitute unfair and deceptive acts or practices. Moundsville acknowledges that Mr. Crouse's only act related to the performance bond was to countersign the performance bond as a West Virginia resident agent of Liberty Mutual.

In Moundsville's Brief in Support of its Motion to Remand, Moundsville did identify these three extremely narrow exceptions to the general rule that an insurance agent acting in the scope of his employment may not be sued personally in contract or tort. However, Moundsville did not plead any of these exceptions, has not made any allegations related to these exceptions, and cannot prove any fact that would cause the Court to apply any of these exceptions in this case. Accordingly, Moundsville cannot succeed on its claims against Mr. Crouse because he is an insurance agent who acted in the scope of his employment. Therefore, Moundsville fraudulently joined Mr. Crouse and the Court should deny Moundsville's Motion to Remand.

## III.   **CONCLUSION**

As set forth in *Fleming* and *Lawson*, the general rule in West Virginia is that an insurance agent acting within the scope of his employment cannot be sued personally.  Mr. Crouse, the only West Virginian defendant, is an agent of Liberty Mutual and was acting within the scope of his employment at all times relevant to this matter.  West Virginia law simply does not allow Moundsville to recover against Mr. Crouse and, as a consequence, Mr. Crouse should be dismissed as a matter of law.  Moundsville fraudulently joined Mr. Crouse and defendants' removal was proper.  Accordingly, the Court should deny Moundsville's Motion to Remand and Motion to Stay.

SHOOK, INC. HEAVY & ENVIRONMENTAL
DIVISION

By:    Of Counsel

Jeffrey A. Holmstrand (#4893)
McDermott & Bonenberger, PLLC
53 Washington Avenue
Wheeling, WV 26003
(304) 242-3220
*Counsel for Defendant*

Christopher T. O'Shaughnessy (Ohio Bar #0069004)
*Admitted pro hac vice*
Peter D. Welin (Ohio Bar #0040762)
*Admitted pro hac vice*
Thompson Hine LLP
41 S. High Street, Suite 1700
Columbus, Ohio  43215
614-469-3200
Christopher.OShaughnessy@ThompsonHine.com
*Counsel for Defendant Shook, Inc. Heavy & EnvironmentalDivision*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MOUNDSVILLE WATER BOARD,

      Plaintiff,

v.                             Civil Action No. 5:09-CV-113

SHOOK, INC. HEAVY &
ENVIRONMENTAL DIVISION,
LIBERTY MUTUAL INSURANCE
COMPANY and GLEN P. CROUSE,

      Defendants.

## CERTIFICATE OF SERVICE

Service of the foregoing DEFENDANT SHOOK, INC. HEAVY & ENVIRONMENTAL

DIVISION'S MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION TO REMAND

FILED OCTOBER 23, 2009 was had upon the following by mailing a true and correct copy

thereof by United States mail, postage prepaid, this 6th day of November, 2009:

                    Louis H. Khourey
                    Jonathan E. Turak
                    GOLD, KHOUREY & TURAK, L.C.
                    510 Tomlinson Avenue
                    Moundsville, WV  26041

                    Walter P. DeForest
                    David J. Berardinelli
                    DeFOREST KOSCELNIK YOKITIS
                     KAPLAN & BERARDINELLI
                    Koppers Building, 30th Floor
                    436 Seventh Avenue
                    Pittsburgh, PA  15219

Avrum Levicoff
LEVICOFF, SILKO & DEEMER, P.C.
Centre City Tower
Suite 1900
650 Smithfield Street
Pittsburgh, PA  15222

Gerard R. Stowers
BOWLES, RICE, MCDAVID, GRAFF
  & LOVE, LLP
Post Office Box 1386
Charleston, WV  25325-1386

SHOOK, INC. HEAVY &
ENVIRONMENTAL DIVISION

By:  _____
Its Counsel

Jeffrey A. Holmstrand (#4893)
McDERMOTT & BONENBERGER, P.L.L.C.
53 Washington Avenue
Wheeling, WV  26003
(304) 242-3220