IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MOUNDSVILLE WATER BOARD,

    Plaintiff,

v.                              Civil Action No. 5:09CV113
                                      (STAMP)
SHOOK, INC. HEAVY & ENVIRONMENTAL DIVISION,
LIBERTY MUTUAL INSURANCE COMPANY,
and GLEN P. CROUSE,

    Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PLAINTIFF'S MOTION TO REMAND;
LIFTING STAY OF DISCOVERY AND FILING;
AND DENYING WITHOUT PREJUDICE DEFENDANT
GLEN P. CROUSE'S MOTION TO DISMISS**

I.  Procedural History

On September 18, 2009, the plaintiff filed this breach of contract action in the Circuit Court of Marshall County, West Virginia against the above-named defendants alleging breach of contract, breach of duty of good faith and fair dealing, unjust enrichment and quantum meruit, breach of performance bond and violation of the West Virginia Unfair Trade Practices Act ("UTPA"). On October 13, 2009, the defendants filed a notice of removal in this Court based upon diversity jurisdiction. The plaintiff then filed a motion to remand to which the defendants separately responded. The plaintiff then filed a reply. Thereafter, this Court entered a stay on filing and discovery until a decision was rendered on the plaintiff's motion to remand.

Having reviewed the parties' pleadings and the relevant law, this Court finds that diversity jurisdiction exists. Accordingly, the plaintiff's motion for remand must be denied, and this Court lifts the stay on filing and discovery. Further, defendant Crouse's motion to dismiss is denied without prejudice.

## II. Facts

The plaintiff, Moundsville Water Board, a West Virginia municipal utility, alleges that defendant Shook, Inc. Heavy & Environmental Division ("Shook") performed defective work in constructing a new water treatment facility for the plaintiff. The plaintiff sued Shook, Liberty Mutual Insurance Company ("Liberty Mutual"), which executed a performance bond concerning Shook's performance, and Glen P. Crouse ("Crouse"), who countersigned the performance bond as a resident agent.

The plaintiff alleges that Shook and Liberty Mutual are foreign corporations and that Crouse is a resident of West Virginia. The defendants do not dispute the citizenship of any party. However, they argue that the plaintiff fraudulently joined Crouse to defeat federal diversity jurisdiction.[1] In contrast, the plaintiff believes that defendant Crouse, as a resident agent who

---

[1] Neither party disputes whether the damages claimed meet the jurisdictional amount for diversity jurisdiction. The plaintiff asserts in the complaint that it is entitled to actual, consequential, and compensatory damages in excess of $225,000.00 and liquidated damages in excess of $662,000.00. Accordingly, this Court concludes that the amount exceeds $75,000.00, excluding costs and interest.

countersigned the performance bond, is liable on the bond and therefore is a proper party to this action.

### III. Applicable Law

A defendant may remove a case from state court to federal court in instances where the federal court is able to exercise original jurisdiction over the matter. 28 U.S.C. § 1441. A federal district court has original jurisdiction over cases between citizens of different states where the amount in controversy exceeds $75,000.00, exclusive of interests and costs. 28 U.S.C. § 1332(a).

The party seeking removal bears the burden of establishing federal jurisdiction. Mulcahey v. Columbia Organic Chems. Co., Inc., 29 F.3d 148, 151 (4th Cir. 1994). Removal jurisdiction is strictly construed, and if federal jurisdiction is doubtful, the federal court must remand. Id.

The doctrine of fraudulent joinder creates an exception to the requirement of complete diversity. See Mayes v. Rapoport, 198 F.3d 457, 461 (4th Cir. 1999). Under this doctrine, removal is permitted even if a non-diverse party has been named as a defendant at the time the case is removed if the non-diverse defendant has been fraudulently joined. Id. "This doctrine effectively permits a district court to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain

jurisdiction." Id. When fraudulent joinder is alleged, a court is permitted to examine the entire record by any means available in order to determine the propriety of such joinder. Rinehart v. Consolidation Coal Co., 660 F. Supp. 1140, 1141 (N.D. W. Va. 1987).

IV. Discussion

A. Fraudulent Joinder

In its pleadings in support of remand, the plaintiff argues that diversity jurisdiction is absent because the parties are not completely diverse. The defendants, in their response, contend that the plaintiff fraudulently joined non-diverse defendant Crouse to defeat diversity jurisdiction.

To establish fraudulent joinder, "the removing party must demonstrate either 'outright fraud in the plaintiff's pleading of jurisdictional facts' or 'there is no possibility that plaintiff would be able to establish a cause of action against the in-state defendant in state court.'" Hartley v. CSX Transp., Inc., 187 F.3d 422, 424 (4th Cir. 1999) (quoting Marshall v. Manville Sales Corp., 6 F.3d 229, 232 (4th Cir. 1993)). A claim of fraudulent joinder places a heavy burden on the defendant. Marshall, 6 F.3d at 232. "[T]he defendant must show that the plaintiff cannot establish a claim against the nondiverse defendant even after resolving all issues of fact and law in the plaintiff's favor. A claim need not ultimately succeed to defeat removal; only a possibility of a right to relief need be asserted." Id. at 232-

4

233 (citations omitted). "Once the court identifies this <u>glimmer of hope</u> for the plaintiff, the jurisdictional inquiry ends." <u>Hartley</u>, 187 F.3d at 426 (emphasis added). Therefore, in order to successfully prove fraudulent joinder, a defendant must demonstrate by clear and convincing evidence that, after resolving all issues of fact and law in the plaintiff's favor, the plaintiff has not alleged <u>any possible</u> claim against the co-defendant. <u>Rinehart</u>, 660 F. Supp. 2d at 1141. A non-diverse party named in the state court action may be disregarded for determining diversity of citizenship when the party's joinder is fraudulent. <u>Mayes</u>, 198 F.3d at 461.

Here, the defendants do not allege outright fraud in the plaintiff's pleadings. Therefore, to defeat the plaintiff's motion to remand, the defendants must establish by clear and convincing evidence that, even resolving all issues of fact and law in the plaintiff's favor, the plaintiff has not alleged any possible claim against Crouse. The defendants have met this burden.

Because the plaintiff's grounds for relief are based upon West Virginia law, the Court looks to the law of that state to determine whether Crouse was fraudulently joined. The plaintiff asserts a cause of action against Crouse for breach of a performance bond.

The plaintiff asserts that the defendants cannot establish that there is no possibility that the plaintiff would be able to establish a cause of action against Crouse in state court. The plaintiff argues that this case involves more than an insurance

5

agent making a sale.  Instead, the plaintiff believes that because defendant Crouse countersigned the performance bond, and did so because an underlying contract required a West Virginia resident agent to countersign, this Court can presume the signature was to allow for a cause of action against the resident agent in the event of a default on the performance bond.  In support of this contention, the plaintiff relies on West Virginia Code § 55-8-7.  This Court does not agree that either the countersignature or the statute cited by the plaintiff creates a liability on the bond for Crouse, the resident agent.

As a general rule, an insurance agent in West Virginia may not be sued in contract or tort when acting in the scope of his authority.  Syl. Pt. 2, Shrewsbery v. Nat'l Grange Mut. Ins. Co., 395 S.E.2d 745 (W. Va. 1990); Syl., 395 S.E.2d 745 Hoon v. Hyman, 105 S.E. 925 (W. Va. 1921).  The plaintiff contends that the general rule does not apply to an agent who countersigns a performance bond at the direction of the underlying contract.  This Court, therefore, turns to the definition of "countersign."  There is a distinction between a signature and a countersignature on a document.  Black's Law Dictionary defines "countersign" as "[t]o write one's own name next to someone else's to verify the other signer's identity."  Black's Law Dictionary 403 (9th ed. 2009).  Accordingly, because a resident agent acting in his authority may not be sued in contract and because a countersignature is merely a

verification of another signer's identity, this Court must look to some other authority to find liability on the part of Crouse.

This Court now turns to the meaning of West Virginia Code § 55-8-7. The statute provides, in relevant part:

> The holder of any note, check, draft, bill of exchange, or other instrument of any character, whether negotiable or not . . . , in any action at law . . . , may join all or any intermediate number of the person liable by virtue thereof, whether makers, drawers, endorsers, acceptors, assignors, or absolute guarantors, or may proceed against each separately, although the promise of the makers, or the obligations of the persons otherwise liable, may be joint or several, or joint and several . . . .

W. Va. Code § 55-8-7 (2009). The legislature enacted this statute with the purpose "to destroy the distinction between joint, joint and several, and several liabilities." State ex rel. Shenandoah Valley Nat'l Bank v. Hiett, 17 S.E.2d 878, 879 (W. Va. 1941). Viewing the law in the plaintiff's favor, this Court will assume that a performance bond may be considered an "other instrument" under the statute. Even with this assumption in the plaintiff's favor, the plaintiff's reliance on this statute is misplaced. According to the statute, any holder of an instrument may join a person that is a party to the instrument, in this case, the performance bond. Nothing in West Virginia Code § 55-8-7 creates liability for an agent who countersigns a performance bond. The language in this statute cannot be read to somehow expose a person who countersigns, a non-party to the contract, to liability. The

defendants have shown that the plaintiff's authority to support its position is not applicable in this case.

The plaintiff cites Warden v. Bank of Mingo, 341 S.E.2d 679 (W. Va. 1985), in support of its position that Crouse is a proper defendant. In Warden, the court addressed a bank that issued a certificate of insurance to one of its borrowers under its group creditor policy with an insurance company. A disability payment provision in the certificate exceeded the authorized amount contained in the master insurance contract. The plaintiff is correct that the Supreme Court of Appeals of West Virginia held that the bank was a party to the contract. However, in that case, the bank acted outside the scope of its authority. Therefore, Warden presents a factual scenario unrelated to the present case.

The defendants have refuted the case law and statutory authority cited by the plaintiff to show that the general rule that a resident agent who countersigns a performance bond is not liable on the bond.[2] This Court now turns to the language of the performance bond and the underlying contract.

---

[2]As the plaintiff discusses in a footnote in its brief in support of its motion to remand, the parties executed the performance bond on December 21, 2005. As of December 31, 2004, W. Va. Code § 33-12-11 no longer requires insurance policies to be signed or countersigned by a licensed resident agent. Therefore, West Virginia law did not obligate Crouse to sign the bond. W. Va. Code § 33-12-11 does not impose liability on a resident agent who countersigns a bond. This Court cannot find any other statute that holds a person who countersigns liable on a performance bond.

8

The underlying contract states that "[b]onds must be countersigned by a licensed West Virginia resident agent." No other language in the underlying contract applies to the resident agent. Therefore, no language in the contract can be said to create liability. Similarly, in the performance bond, no language creates liability on the part of the countersigning resident agent. The plaintiff characterizes the situation as a novel issue of law in West Virginia. This Court does not agree. The law on the liability of resident agents and the meaning and effect of a countersignature are well established. While the plaintiff repeatedly refers to Crouse as a "signatory" to the bond, this is not the case. As mentioned above, there is a distinction between one who signs a bond as a surety and one who countersigns a bond.

This Court, viewing all issues of fact and law in the plaintiff's favor, cannot find a "glimmer of hope" that defendant Crouse is a proper party who may be held liable on the performance bond. The defendants have demonstrated by clear and convincing evidence that the plaintiff has alleged no possible claim against Crouse. There is no evidence that Crouse acted outside of his authority as an agent to make him liable on the contract. The defendant has refuted all case law and statutes presented to this Court by the plaintiff for the proposition that liability exists in this situation against a countersigning resident agent. Further, the defendants have provided this Court with a copy of the

underlying contract and performance bond, which contain no language that would indicate to a person who countersigns, such as Crouse, that in the event of default by the surety, he will be treated as a surety and be liable on the bond. This Court therefore denies the plaintiff's motion to remand and lifts the stay on discovery and filings in this case.[3]

B. <u>Motion to Dismiss</u>

On October 19, 2009, defendant Crouse filed an answer to the plaintiff's complaint, which stated that claims against Crouse should be dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). However, to date, Crouse has not submitted an accompanying memorandum of law to support his motion. Pursuant to Local Rule of Civil Procedure 7.02(a), all dispositive motions must be accompanied by a supporting memorandum. Failure to file an accompanying memorandum will result in denial of the motion without prejudice. <u>Id.</u> Accordingly, the motion to dismiss filed by Crouse is hereby denied without prejudice to refile pursuant to Local Rule of Civil Procedure 7.02(a).

---

[3]The parties shall proceed with the initial discovery meeting and file a report on the results. This report shall include the parties' report on those matters set forth in Local Rules of Civil Procedure 16.01(b)(1)-(5) and (c) and the parties' discovery plan as required by Federal Rule of Civil Procedure 26(f). This Court will enter a scheduling order upon receipt of the meeting report and proposed discovery plan.

## V. Conclusion

For the reasons stated above, the plaintiff's motion to remand is DENIED. Accordingly, the stay on discovery and filing is LIFTED. Defendant Crouse's motion to dismiss is DENIED WITHOUT PREJUDICE.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED: December 8, 2009

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE