IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

MOUNDSVILLE WATER BOARD

    Plaintiff,

v.                                    Civil Action No. 5:09CV113
                                             (STAMP)

SHOOK, INC. HEAVY & ENVIRONMENTAL DIVISION,
LIBERTY MUTUAL INSURANCE COMPANY,
and GLEN P. CROUSE,

    Defendants,

and

SHOOK, INC. HEAVY & ENVIRONMENTAL DIVISION,

    Plaintiff,

v.                                    Civil Action No. 5:10CV28
                                             (STAMP)

CITY OF MOUNDSVILLE WATER BOARD,

    Defendant.

**MEMORANDUM OPINION AND ORDER
DENYING DEFENDANT LIBERTY MUTUAL INSURANCE COMPANY'S
MOTION TO DISMISS OR STAY**

I.  Procedural History

On May 29, 2009, Shook, Inc. Heavy & Environmental Division ("Shook") filed a complaint against the City of Moundsville Water Board ("Moundsville Water Board") in the United States District Court for the Southern District of Ohio, alleging breach of contract, breach of good faith and fair dealing, and unjust enrichment and quantum meruit. Then, on September 18, 2009, Moundsville Water Board filed a complaint against Shook, Liberty

Mutual Insurance Company ("Liberty Mutual"), and Glen P. Crouse,[1] in the Circuit Court of Marshall County, West Virginia alleging breach of contract, breach of duty of good faith and fair dealing, unjust enrichment and quantum meruit, breach of performance bond and violation of the West Virginia Unfair Trade Practices Act ("UTPA"). Thereafter, the defendants removed the action to this Court.

On March 2, 2010, Judge Walter Herbert Rice of the United States District Court for the Southern District of Ohio transferred Civil Action No. 5:10CV28 to this Court, stating that the Southern District of Ohio lacked personal jurisdiction over Moundsville Water Board. Moundsville Water Board then filed a motion to consolidate Civil Action No. 5:09CV113 with Civil Action No. 5:10CV28. All parties consented to the motion for consolidation.

Liberty Mutual filed a motion to dismiss or stay, to which Moundsville Water Board filed a response in opposition. Liberty Mutual filed a reply. For the reasons stated below, this Court must deny Liberty Mutual's motion to dismiss or stay.

## II. Facts[2]

Moundsville Water Board contracted with Shook on December 21, 2005 for Shook to construct and install a new water treatment

---

[1]This Court has dismissed Glen P. Crouse as a party in this civil action by separate order.

[2]For purposes of deciding this motion, the facts are based upon the allegations contained in the complaint.

facility in Moundsville, West Virginia that would condition and filter untreated water. Moundsville Water Board alleges that Shook improperly installed two traveling bridge filtration systems, which are defective and have never worked correctly. Moundsville Water Board contends that the defects have reduced the volume of water that it is able to treat, raised the costs of treating water, and impaired its ability to deliver water to its customers as intended by the contract. Moundsville Water Board argues that Shook breached provisions of the contract, including a general obligation and warranty that "all Work will be in accordance with the Contract Documents and will not be defective." Moundsville Water Board states that Shook breached its contractual obligation to provide filters with cell integrity and in conformity with the specifications required in the contract. On April 2, 2008, the project engineer notified Shook, by letter, that Shook needed to repair the defective traveling bridge filtration systems. Moundsville Water Board contends that Shook continued to work on the filtration system. On February 9, 2009, Moundsville Water Board contends that the attorney representing Shook and Liberty Mutual asserted that there were no defects in the traveling bridge filtration systems, that the contract did not require cell integrity, and that Moundsville Water Board should address the contamination issue. Moundsville Water Board argues that Liberty Mutual and Shook made these assertions in bad faith. Moundsville

3

Water Board believes that the contract requires that Shook remove the defective filters from the project and replace them without cost to Moundsville Water Board. Shook has not complied with this request.

On January 20, 2009, Moundsville Water Board wrote Liberty Mutual, notifying Liberty Mutual that it was considering declaring a "Contractor Default" as described in the performance bond. Moundsville Water Board contends that Liberty Mutual failed to implement reasonable standards for the prompt investigation of its claim. Moundsville Water Board provided notice of Shook's alleged default to Liberty Mutual and its willingness to pay the balance of the completion price to Liberty Mutual or to a contractor selected by Liberty Mutual to complete the project. After not receiving a response, Moundsville Water Board notified Liberty Mutual on August 27, 2009 that Liberty Mutual would be in default of the performance bond if it failed to meet its obligations as surety within fifteen days. On September 11, 2009, Liberty Mutual sent Moundsville Water Board a letter refusing to follow the path chosen by Moundsville Water Board. Moundsville Water Board now believes that Liberty Mutual is in default of the performance bond. Further, Moundsville Water Board believes that Liberty Mutual's letter of January 20, 2009 misrepresented pertinent facts. Moundsville Water Board contends that without conducting a reasonable investigation based on all available information, Liberty Mutual did not attempt in

good faith to effect prompt, fair, and equitable settlement of Moundsville Water Board's claim.

Liberty Mutual filed a motion to dismiss or stay, in which it argues that Moundsville Water Board's claims with respect to breach of the performance bond are premature and should be dismissed without prejudice because the underlying dispute between Moundsville Water Board and Shook regarding the obligations of the parties under the construction contract has not been decided or, at least, stayed until after the bond issue has been resolved. It also argues that Moundsville Water Board has failed to state a claim upon which relief can be granted for its common law and statutory claims of bad faith and that those claims should be dismissed with prejudice.

### III. Applicable Law

In assessing a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept all well-pled facts contained in the complaint as true. Nemet Chevrolet, Ltd v. Consumeraffairs.com, Inc, 591 F.3d 250, 255 (4th Cir. 2009). However, "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute well-pled facts for Rule 12(b)(6) purposes." Id. (citing Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)). This Court also declines to consider "unwarranted inferences,

unreasonable conclusions, or arguments." Wahi v. Charleston Area Med. Ctr., Inc., 562 F.3d 599, 615 n.26 (4th Cir. 2009).

It has often been said that the purpose of a motion under Rule 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief; it is not a procedure for resolving a contest about the facts or the merits of the case. 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1356 (3d ed. 1998). The Rule 12(b)(6) motion also must be distinguished from a motion for summary judgment under Federal Rule of Civil Procedure 56, which goes to the merits of the claim and is designed to test whether there is a genuine issue of material fact. Id. For purposes of the motion to dismiss, the complaint is construed in the light most favorable to the party making the claim and essentially the court's inquiry is directed to whether the allegations constitute a statement of a claim under Federal Rule of Civil Procedure 8(a). Id. § 1357.

A complaint should be dismissed "if it does not allege 'enough facts to state a claim to relief that is plausible on is face.'" Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "Facial plausibility is established once the factual content of a complaint 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Nemet Chevrolet, 591 F.3d at 256 (quoting Iqbal, 129 S. Ct. at 1949). Detailed

6

factual allegations are not required, but the facts alleged must be sufficient "to raise a right to relief about the speculative level." Twombly, 550 U.S. at 555.

IV. Discussion

A. Choice of Law

As a preliminary matter, this Court must address what law governs the allegations of unfair claim handling. Liberty Mutual, without citing supporting authority, argues that "one could persuasively argue that Massachusetts law applies on the basis that any unfair handling of claims would have taken place in that state." This Court does not agree.

A federal court sitting in diversity applies the choice-of-law rules of the state in which it sits. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496 (1941). Accordingly, this Court will apply West Virginia's choice-of-law rules. Absent a "compelling reason," West Virginia courts apply "the ancient doctrine of lex loci contractus" in applying contract cases. Johnson v. Neal, 418 S.E.2d 349, 352-53 (W. Va. 1992). While the West Virginia Supreme Court of Appeals has been "critical of the fuzzy standards set forth in the Restatement (Second) of Conflicts," in order to "resolve particularly thorny conflicts problems" the Supreme Court of Appeals has turned to the standards set forth in the Restatement. Oakes v. Oxygen Therapy Servs., 363 S.E.2d 130, 131 (W. Va. 1987). The Restatement provides that absent an effective

choice of law by the parties, a suretyship contract and the rights created in that contract are determined "by the law governing the principal obligation which the contract of suretyship was intended to secure," unless some other state has a more significant relationship to the transaction and the parties.  Restatement (Second) of Conflicts of Laws § 194 (1971).

In this case, the underlying construction contract at issue contains a choice-of-law provision selecting "the law of the state in which the Project is located," which is West Virginia law. Applying West Virginia choice of law rules to the provision, this Court finds that it must apply West Virginia substantive law.  West Virginia courts will enforce a choice of law provision unless "the chosen state has no substantial relationship to the parties or the transaction, or when the application of the law of the chosen state would be contrary to a fundamental public policy of the state whose law would apply in the absence of a choice of laws provision." Gen. Elec. Co. v. Keyser, 275 S.E.2d 289, 293 (W. Va. 1981).  This Court finds that West Virginia has a substantial relationship to both the parties and the transaction as the contract was to be completed in West Virginia and the plaintiff is a West Virginia municipal corporation.  Accordingly, West Virginia law applies to the validity and provisions of the performance bond.

B.  <u>Breach of Performance Bond</u>

Liberty Mutual argues that the plaintiff's claim for breach of performance bond is premature and that the claim should be dismissed without prejudice or stayed.  Liberty Mutual contends that the litigation between Moundsville Water Board and Shook will determine the underlying contract dispute and that the resolution of that dispute "offers the most effective and efficient manner by which to resolve the gravamen of the dispute."  Liberty Mutual further argues that the West Virginia Code indicates a legislative intent that the underlying dispute must be resolved through litigation solely between Shook and Moundsville Water Board.

Turning to the language of the performance bond, paragraph three states that if there is no default by Moundsville Water Board, Liberty Mutual's obligation under the performance bond <u>shall arise</u> after: (1) Moundsville Water Board notifies Liberty Mutual and Shook that it is considering declaring a Contractor Default and has attempted to arrange a conference to discuss methods of performing the construction contract; (2) Moundsville Water Board declares a Contractor Default and terminates Shook's right to complete the contract; and (3) Moundsville Water Board agrees to pay the balance of the contract price to Liberty Mutual or to a contractor selected to complete the contract.  After Moundsville Water Board has satisfied these three conditions, paragraph four of the performance bond states that Liberty Mutual is to take one of

9

the following actions: (1) with the consent of Moundsville Water Board, arrange for Shook to perform and complete the contract; (2) perform the contract itself; (3) arrange for new bids and a new contract; or (4) waive its right to perform and complete, arrange for completion or obtain a new contractor and with reasonable promptness under the circumstances either determine the amount for which it may be liable and pay Moundsville Water Board or deny liability in whole or in part and notify Moundsville Water Board of its reasons for doing so.

Moundsville Water Board took the three steps required in paragraph three to trigger Liberty Mutual's obligation under paragraph four. Liberty Mutual, however, contends that Moundsville Water Board cannot claim a "contractor default" for a completed project. This Court finds that Moundsville Water Board has presented enough facts to state a claim to relief that is plausible on its face. The contract states that Shook was to complete all work as specified. Moundsville Water Board has alleged facts that Shook did not complete all work as specified. Further, Moundsville Water Board has not fully paid Shook and has made the offer to Liberty Mutual to turn the remainder of the payment to Liberty Mutual to complete the project correctly.

Liberty Mutual argues that Moundsville Water Board must <u>establish</u> a default by Shook before it can sue for breach of performance bond. This Court does not agree. The clear language

10

of the performance bond states that Moundsville Water Board must inform the parties it is considering a contractor default and then, secondly, declare a contractor default. Moundsville Water Board then must offer the remainder of the contract price to Liberty Mutual. It is then up to Liberty Mutual to rebid the project, complete the project, have Shook complete the project, or waive these options and deny liability.

At this time, this Court does not have enough facts to decide this issue. However, this Court does have enough facts to conclude that the Moundsville Water Board's claim survives a motion to dismiss and the claim should not be stayed. Paragraph five of the performance bond leads to this conclusion. That paragraph states that if Liberty Mutual does not act promptly in deciding which course to pursue under paragraph four, it is in default. If Liberty Mutual chooses to deny liability and inform Moundsville Water Board of its reasons for doing so, Moundsville Water Board is "entitled to enforce any remedy available" to it.

Liberty Mutual cites no authority for its proposition that a stay is required where the issues of whether Shook or Moundsville breached the contract are undecided. As Moundsville Water Board correctly notes in its response, this is purely Liberty Mutual's preference. Liberty Mutual does state that West Virginia Code §§ 45-1-1 through 45-1-3 indicate a legislative intent that the underlying dispute must be resolved through litigation solely

11

between Shook and Moundsville Water Board.  This Court does not agree.  Section 45-1-1 provides a surety the right to demand that a creditor sue if an action has accrued.  Section 45-1-2 provides for the discharge of a surety if a creditor fails to sue.  Section 45-1-3 states that a judgment, decree, or recovery is not binding on a surety not a party to a proceeding.

Liberty Mutual offers no support for its suggestion that because the legislature does not mandate concurrent suits, it impliedly forbids concurrent suits.  The statutory language of § 45-1-3 supports the notion of concurrent suits where it states that ". . . no judgment . . . had in any suit . . . to which the surety . . . <u>was not a party regularly served with process</u>, shall be in any ways binding on such surety . . ." (emphasis added).  This language makes clear that a surety could have been a party, regularly served with process, in a concurrent suit.

Finally, this Court addresses Liberty Mutual's citation to <u>A.E.R. Construction, Inc. v. Travelers Casualty and Surety</u>, 2007 WL 3046324 (N.D. W. Va. Oct. 17, 2007).  Liberty Mutual contends <u>A.E.R. Construction</u> is "a remarkably similar case" involving the staying of claims against a surety related to a payment bond because of the pendency of a breach of contract action by the obligee against a contractor.  In <u>A.E.R. Construction</u>, the civil action before the Northern District of West Virginia involved a claim made by a subcontractor on a project upon a payment bond

12

issued by a surety in connection with the construction of a school. Id. at *1. The payment bond was issued to Waynesboro Construction Co., Inc., the general contractor on the project. Id. The surety, pursuant to West Virginia Code § 45-1-1, demanded that A.E.R. Construction file an action against Waynesboro to seek recovery on the underlying claims. Id. at *4. A.E.R. Construction, the subcontractor, then filed suit against Waynesboro, the general contractor, in the state circuit court. Id. Judge Bailey granted the defendant's motion to stay, reasoning that the underlying state court case would have "a distinct bearing" on the case and "could expose either party to the danger of inconsistent verdicts." Additionally, Judge Bailey stayed the case for the interests of judicial economy.

This Court finds that A.E.R. Construction can be distinguished from the present case. First, because the two actions are in the same civil action in the same court, there is no danger of inconsistent verdicts. Further, in this case, it is in the interest of judicial economy for Moundsville Water Board to proceed against Liberty Mutual. By not staying this action, this Court believes that it will eliminate duplicative discovery and conserve the resources of the parties, the attorneys, and the judiciary.

C.  Breach of Common Law and Statutory Duty of Good Faith

Liberty Mutual contends that Moundsville Water Board's relationship with Liberty Mutual is adversarial and should not give

13

rise to the covenant of good faith and fair dealing, but instead should be seen as a third party relationship. Liberty Mutual argues that it had no meaningful relationship with Moundsville Water Board until Moundsville Water Board initiated the claims process. Liberty Mutual argues that, as a result, Moundsville Water Board lacks the necessary status to bring a claim under the common law breach of the duty of good faith and fair dealing or under the UTPA. This Court does not agree.

The West Virginia Code defines "third-party claimant" as "any individual, corporation, association, partnership or any other legal entity asserting a claim against any individual, corporation, association, partnership or other legal entity insured under an insurance policy or insurance contract for the claim in question. W. Va. Code § 33-11-4a(j)(1). No provision of the West Virginia Code suggests that "third-party claimant" applies to Moundsville Water Board in this situation. As Liberty Mutual discusses in its motion, the surety insurance protects Moundsville Water Board. Liberty Mutual voluntarily entered into the surety relationship. The construction contract between Moundsville Water Board and Shook required a performance bond. Importantly, the performance bond states on page one that Shook and Liberty Mutual "are held firmly bound unto the CITY OF MOUNDSVILLE WATER BOARD." On page two, in paragraph one of the performance bond, it states that Shook and Liberty Mutual jointly and severally bind themselves to Moundsville

14

Water Board for the performance of the construction contract. Further, Liberty Mutual states in its motion that Moundsville Water Board consented to the selection of Liberty Mutual as the surety and accepted the terms and conditions of the performance bond.

Insurance, as defined in the West Virginia Code, is "a contract whereby one undertakes to indemnify another or to pay a specified amount upon determinable contingencies." W. Va. Code § 33-1-1. Surety insurance includes "[i]nsurance guaranteeing the performance of contracts . . ." W. Va. Code § 33-1-10(f)(2). Liberty Mutual agreed to indemnify Moundsville Water Board, not Shook. Therefore, Moundsville Water Board is the party protected by the performance bond.

This Court agrees with Moundsville Water Board that West Virginia has not addressed the propriety of a bad faith action by an obligee against a construction surety. All that is required of Moundsville Water Board is that its complaint contain factual allegations enough to raise a right to relief above the speculative level. Twombly, 550 U.S. at 555. Moundsville Water Board argues that numerous jurisdictions recognize a separate cause of action in tort for a surety's bad faith in processing claims made under a surety bond. See Transamerica Premier Ins. Co. v. Brighton Sch. Dist. 27J, 940 P.2d 348 (Colo. 1997) ("[T]he rationale for providing insureds with a cause of action in tort for an insurer's bad faith in processing a claim applies with equal force in the

commercial surety context."); <u>Bd. of Dirs. of the Ass'n of Apartment Owners of the Discovery Bay Condo. v. United Pac. Ins. Co.</u>, 884 P.2d 1134, 1137 (Haw. 1994) ("Clearly, the surety owes a duty of good faith and fair dealing to <u>both</u> the principal and the obligee on the bond.").

Liberty Mutual, on the other hand, argues that some courts have held differently. In support, Liberty Mutual cites to two opinions. In <u>Great American Insurance Company v. North Austin Municipal Utility District No. 1</u>, 908 S.W.2d 415, 419 (Tex. 1995), the Supreme Court of Texas explained that the courts imposing the duty of good faith and fair dealing in the surety context relied on "the conclusion that suretyship is insurance under the applicable state statutes or case law." The court stated that because the legislative intent was clear in those other states that the legislature intended to include suretyship within the coverage of insurance statutes, those courts concluded that insurers and sureties owe the same duty to act in good faith. <u>Id.</u> The Supreme Court of Texas found no duty because it stated that the Texas legislature did not intend to include suretyship as the business of insurance for all purposes under the insurance code. <u>Id.</u> at 420. Liberty Mutual also points to <u>Cincinnati Insurance Company v. Centech Building Corporation</u>, 286 F. Supp. 2d 669, 690 (M.D.N.C. 2003), in which a federal district court refused to create rights in North Carolina which the state's courts might not choose to

16

recognize. The court found that the type of "special relationship" which exists between an insurer and its insured is absent in the relationship between a surety and an obligee. Id. at 691. The Court said that its conclusion was heavily underscored "by the principles espoused by the North Carolina Court of Appeals . . . regarding the fundamental difference in insurance and suretyship." Id.

As mentioned above, the West Virginia Code provides that the performance bond is an insurance contract. See W. Va. Code § 33-1-10(f)(2) (providing that surety insurance includes insurance guaranteeing the performance of contracts). This Court finds that Moundsville Water Board has filed a complaint containing factual allegations which raise a right to relief above the speculative level, which is all that is required of it at this stage in the litigation. Twombly, 550 U.S. at 555.

Liberty Mutual also asserts that Moundsville Water Board has failed to indicate a "general business practice," as is required to bring a suit under the UTPA. Liberty Mutual argues that Moundsville Water Board has not identified any claims, other than its own, to support its allegation that Liberty Mutual's conduct occurred with enough frequency to meet the statutory requirement of an indication of general business practice. The West Virginia Supreme Court of Appeals allows a finding of a general business practice in the handling of a single claim. Dodrill v. Nationwide

17

Mut. Ins. Co., 491 S.E.2d 1, 12-13 (W. Va. 1996). In these cases, "the evidence necessary to distinguish a general business practice frequently violative of the statute from the wholly proper investigation and settlement process requires a somewhat more qualitative inquiry than is required where the same forbidden practice is found in several claims." Id. at 13. As stated by the Fourth Circuit Court of Appeals, an aggrieved plaintiff is sometimes compelled "to contact other claimants, insureds, and attorneys who have previously dealt with the insurer." Maher v. Continental Cas. Co., 75 F.3d 535, 543 n.10 (4th Cir. 1996). This Court concludes that Moundsville Water Board should be able to develop the "qualitative inquiry" required during discovery. Further, this Court notes that the plaintiff has shown enough facts to state a claim to relief that is plausible on its face. Twombly, 550 U.S. at 570. Moundsville Water Board alleges that after Shook failed to repair the alleged defect, it declared a contractor default and Liberty Mutual did not act under the terms of the performance bond. Moundsville Water Board attached numerous letters to its complaint to allege that Liberty Mutual did not perform its obligations under the performance bond. Further, Moundsville Water Board also attached reports from the project engineers, which it contends shows Liberty Mutual's act of bad faith in not responding to the engineers' findings.

Finally, Liberty Mutual argues that failure of a construction insurer to pay a claim where its obligation to do so is debatable is insufficient to constitute bad faith. This Court agrees with Moundsville Water Board that this is the question for ultimate resolution, not grounds for dismissal before discovery.

## V. Conclusion

For the reasons stated above, this Court finds that Liberty Mutual's motion to dismiss or stay must be DENIED.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein.

DATED:   June 22, 2010

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE